UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

vs.

Case No. 26-20113

Honorable Robert J. White

Victoria Green,

Defendant.
_______________________/

**Government's Sentencing Memorandum**

On October 30, 2025, the defendant, Victoria Green, contacted Clifford Noel Jr. to buy marijuana from him, as she often did. In response, Noel Jr. asked the defendant to buy a gun for him. The defendant obliged. She and Noel Jr. then went to a federally licensed firearm store, and the defendant purchased a powerful, AR-style rifle for Noel Jr. She did this *despite knowing* that Noel Jr. was a convicted felon and could not own firearms and *despite recognizing* that Noel Jr. had both mental health issues and current relationship problems with his girlfriend and mother of his children, with whom Noel Jr. was living. In completing this purchase, the defendant falsely told the gun dealer that she was purchasing the rifle for herself. The defendant bought the gun using cash

that Noel Jr. gave her, and immediately after purchasing it, she gave the gun to Noel Jr. In return for her help, Noel Jr. gave the defendant free marijuana: her "normal" quarter ounce. In the defendant's words, the marijuana was "what I asked for anyways."

Four hours later, a frantic 911 call reported that a woman had been shot in the head and killed in her home. The deceased was Noel Jr.'s girlfriend. Twenty minutes later, Noel Jr. was found dead in his car in the middle of Telegraph Road in Bloomfield Township. He had committed suicide. Sitting next to him was the same AR-style rifle that the defendant purchased for Noel Jr. earlier that day. Ballistic analysis showed that Noel Jr. used that same gun to kill the victim and himself.

As a result of the straw purchase in this case, two individuals are dead and five children have lost a parent. This is a result of the defendant's reckless and illegal act to purchase a firearm for Noel Jr. This is a serious felony offense, and one in which our criminal justice system rightfully imposes severe punishment. It is a crime to buy a firearm for a felon *because* the intentions of the felon may not be clear and *because* the ultimate victims may not be known. Our laws were written to keep guns out of the hands of individuals like Noel Jr. and prevent the tragedy that

unfolded in this case. The defendant flagrantly disregarded these essential public safety laws and, as a result, an entire family will be forever affected.

For the defendant's dangerous and criminal acts, the court should sentence her to within the guideline range. Specifically, the court should sentence the defendant to 12 months imprisonment, which is the bottom of the guideline range.

## I. Factual Background and Procedural History

On October 30, 2025, the defendant and Noel Jr. drove to a federally licensed firearms dealer in Waterford, driving a rental Nisan Altima. They both got out of the vehicle to go into the store. As they approached the store, Noel Jr. counted cash:



The two went up to the clerk's counter of the gun shop. After perusing the weapons behind the counter, Noel Jr. pointed to a Ruger, AR556, 5.56 caliber rifle. The defendant approached the counter and confirmed to the clerk that she wanted to purchase the gun. The defendant then bought the Ruger in cash:





In order to buy the gun, the defendant completed a required ATF Form 4473, which the store clerk explained to the defendant. Question 21(a) of Form 4473 asks:

> Are you the actual transferee/buyer of all the firearm(s) listed on this form and any continuation sheet(s)? **Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person.**

The defendant responded "Yes" to this question under penalty of filing a false statement.

The defendant and Noel Jr. then exited the firearms dealer with the defendant carrying the AR-style rifle. She placed the gun in the trunk of the Nissan Altima and entered the vehicle. Noel Jr. went back into the store to purchase ammunition. He returned to the vehicle, and they both drove away.

Less than four hours later, the Oakland County Sherriff's Office deputies were dispatched after a frantic 911 caller reported that a woman was found with a gunshot wound in her home. Sherriff's deputies responded to the call and discovered that the woman was deceased. Around 20 minutes later, Bloomfield Township Police Department found Noel Jr. deceased in the rental Nissan Altima, stopped in the middle of Telegraph Road. He was found with the AR-style rifle the defendant had just purchased for him, and he had committed suicide using that firearm.

Ballistic testing was conducted on the rifle, and it was compared to the casings recovered from the victim's body. The analysis confirmed that Noel Jr. had used that same rifle to kill the victim before killing himself.

Upon further investigation, federal authorities discovered that the defendant had purchased the firearm that Noel Jr. used in the murder-suicide. Agents interviewed the defendant soon thereafter.

At the interview, the defendant was *Mirandized* and gave a recorded statement. At first, the defendant lied. She told law enforcement that she had purchased the gun for herself, and she only had Noel Jr. present for advice. After being confronted with this false statement, the defendant admitted that she had purchased the firearm for Noel Jr.

The defendant explained that she knew Noel Jr. from buying marijuana from him. On the day of the incident, in the defendant's words, she "asked for weed, as I normally do." In response, Noel Jr. asked her to purchase a firearm for him. According to the defendant, Noel Jr. told her he wanted to purchase the gun for his son.[1] The defendant explained to the agents that she knew Noel Jr. was a felon and was not allowed to buy guns. Nonetheless, the defendant agreed to purchase the firearm, and they both drove together to the dealer. Noel Jr. gave her the cash to purchase the rifle. In return for getting him the gun, Noel Jr. gave her free marijuana: her "normal quarter." As the defendant explained, "that is what I asked for anyways."

---

[1] No mention was made of the son's age or the son's ability to legally own a firearm. From information available to the government, Noel Jr. had underaged sons at that time.

The defendant also provided details as to Noel Jr.'s state of mind, his mental health, and his relationship with the victim. The defendant explained that Noel Jr. was "on the phone arguing with his baby momma" on the day of the purchase. According to the defendant, Noel Jr. and the victim were actively in arguments, and the victim had been repeatedly calling Noel Jr. The defendant knew that Noel Jr. had ongoing "relationship issues" with the victim. The defendant also explained that she had seen Noel Jr. a couple days before the gun purchase, and the defendant had learned details of Noel Jr.'s disputes with the victim. Noel Jr. and the victim were going to break up, and Noel Jr. wanted to leave the victim, despite living with her and sharing two children.

Further, the defendant recognized that Noel Jr. had mental health problems. She repeatedly asked him about his state of mind and did "mental checks." In the defendant's words, "she always asked because something is not right." However, her relationship was ultimately driven by marijuana. When she saw him, it was "just to get the weed, conversation for 5-10 minutes, and that just be that."

The victim had five children, including two she shared with Noel Jr. She was actively involved in the lives of her children and was a primary caregiver.

On February 25, 2026, the defendant was indicted for making a false statement during the acquisition of a firearm under 18 U.S.C. § 922(a)(6) and for providing a firearm to a prohibited person under 18 U.S.C. § 922(d). ECF No. 21. On May 26, 2026, the defendant pleaded guilty to making a false statement during the acquisition of a firearm. ECF No. 27. She accepted that she purchased the Ruger, AR556, 5.56 caliber rifle on behalf of Noel Jr. and transferred the gun to him after the purchase, despite knowing that he was a convicted felon. *Id.*, PageID.91-92.

The defense submitted several objections to the presentence report. The Probation Department asked for a response from the government, and none of the defense objections were adopted.

## II. Advisory Guideline Range

The United States Probation Department determined that the applicable offense level is 13. Defendant has a criminal history category of I. Therefore, the advisory guideline range is 12 to 18 months

imprisonment. Having reviewed the presentence investigation report, the government has no objections to that calculation. However, the defense lodged several objections, all of which were meritless.

First, the defense argued that the defendant is entitled to a reduction under U.S. Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(10). That guideline provision applies when a straw purchase was "motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense" or the straw purchaser "was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition." U.S.S.G. § 2K2.1(b)(10)(C). The provision would serve to negate an enhancement the defendant received for transferring a firearm to a felon under U.S.S.G. § 2K2.1(b)(6).

The Probation Department rejected this reduction, and for good reason. This case is exactly why the U.S.S.G. § 2K2.1(b)(6) enhancement exists. The defendant engaged in a straw purchase in which she illegally transferred a powerful, AR-style rifle to a prohibited person, who soon thereafter used the gun to kill his girlfriend and himself. The defendant

asked for marijuana from Noel Jr., and he gave her free marijuana in return for the purchase.

The Sentencing Commission recognized the extraordinary dangerousness of transferring weapons illegally, especially to prohibited individuals such as Noel Jr. Sentencing Commission, Amendment 819 (explaining the wide backing for the conclusion that "such conduct contributes to the illegal flow of firearms and that such defendants are currently under-punished as compared to felons in possession of the trafficked weapons"). The Commission's concerns were well justified.[2]

Straw purchases drive illegal gun possession, violence, and shootings, which is the whole reason for U.S.S.G. § 2K2.1(b)(6). And this case is an excellent example of the serious danger straw purchasing presents. The relationship between Noel Jr. and the defendant was not so close and coercive that it was the result of an "intimate or familial relationship or by threats or fear" and the defendant "was otherwise unlikely to commit such an offense." U.S.S.G. § 2K2.1(b)(10)(C)(i). In a similar vein, there is nothing in the record to show that the defendant was "unusually vulnerable" as a result of a "physical or mental

---

[2] *See* notes 3-6, *infra*.

condition." U.S.S.G. § 2K2.1(b)(10)(C)(ii). There is no evidence that the defendant completed the purchase as a result of threats, abuse, intimidation, or harassment. There is no evidence of abuse or harassment whatsoever. The defendant and Noel Jr. were not related, and they did not live in the same household, whereas Noel Jr. and the victim lived together. Further, there is no evidence of a close personal or intimate relationship sufficient to *control* or *override* the defendant's intentional decision to engage in a straw purchase.

This is a far cry from an abusive, intimate, or highly personal relationship that coerced the defendant to commit a crime she did not want to commit. The defendant and Noel Jr. connected on the day of the purchase because the defendant wanted to buy marijuana, and Noel Jr. was her regular dealer. When she asked to buy drugs, Noel Jr. asked her to purchase a gun. She agreed, despite knowledge of his ongoing disputes with his girlfriend and despite past concerns about his mental health. After the gun was purchased, she transferred it to Noel Jr., and he gave the defendant free marijuana in return. In the defendant's words, "that's what I asked for anyways."

The enhancement under U.S.S.G. § 2K2.1(b)(6) is fully warranted, and the reduction under U.S.S.G. § 2K2.1(b)(10) is inappropriate. The Probation Department correctly rejected the defendant's objection.

The defendant next claimed that she should receive a reduction for being a minimal or minor participant under U.S.S.G. § 3B1.2. But as the Probation Department found, the defendant "acted alone in lying to a firearms dealer while straw purchasing a weapon for a convicted felon," and there were no co-defendants in the indictment. The defendant was the *sole* and *only* person to lie to the firearms dealer and purchase the firearm on behalf of Noel Jr. No one else committed that crime. The defendant is not convicted of accomplice to murder, nor is she convicted of being a felon in possession. The conduct at issue is an illegal straw purchase, which the defendant committed on her own volition, and for that offense conduct, the defendant played a *central* role. *See United States v. Roper*, 135 F.3d 430, 434 (6th Cir. 1998) ("The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable." (emphasis added)).

There was no group of offenders who lied to purchase the AR-style rifle; only the defendant did that. Thus, neither reduction is appropriate.

*See* U.S.S.G. § 3B1.2 cmt 2 (discussing the limited application of either reduction where the defendant was the only defendant who engaged in the relevant conduct). Further, in completing the illegal purchase, the defendant was not "plainly among the least culpable of those involved in the conduct of a group," which is the high bar for a minimal participant reduction. U.S.S.G. § 3B1.2 cmt 4. The defendant was also not a "minor participant" with little culpability or involvement in the criminal act. *See United States v. Williams*, 505 F. App'x 426, 428 (6th Cir. 2012) ("This Court has further defined a minor participant as one whose conduct was substantially less culpable than the average participant and was not necessary to the success of the enterprise." (collecting sources)).

In all, the defendant is not "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 cmt 3(A). Instead, the defendant was the only straw purchaser and was essential to the commission of the offense conduct.

The defense also objected the Probation Department's conclusion that the illegal purchase of the firearm for Noel Jr. "culminated" in the deaths of the victim and Noel Jr. In addition, the defense objected to the

Probation Department's description of the offense, including the fact that Noel Jr. gave the defendant free marijuana in return for the purchase.

These objections were meritless and amounted to requests to ignore the clear record of this case. As the defendant explained to law enforcement, she reached out to Noel Jr. to buy weed, she purchased the AR-style rifle for him, and he gave her a free "quarter ounce" in return. The record demonstrates that the defendant's illegal purchase directly led to the shooting deaths of the victim and Noel Jr., *mere hours* after the purchase. The Probation Department correctly rejected the objections.

## III. Section 3553(a) Factors

Through 18 U.S.C. § 3553(a), Congress provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, including retribution, deterrence, protection of the public, and rehabilitation; (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

Considering all these factors together, a sentence of 12 months imprisonment, at the bottom of the defendant's advisory guideline range, is fully justified.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The nature and circumstances of the offense are exceedingly serious and warrant a strong term of imprisonment.

Straw purchases, such as the one conducted by the defendant in this case, are extraordinarily dangerous. An extensive array of gun laws and background checks bar access to firearms by certain prohibited groups, including felons, because they pose a significant safety risk to both the community and themselves. Dangerousness is an essential reason why federal law prohibits felons from being in possession of firearms or ammunition. *See, e.g., United States v. Williams*, 113 F.4th 637, 652-57 (6th Cir. 2024) (discussing the long history and interests in preventing dangerous individuals from possessing firearms).

Furthermore, it is well established that straw purchasing is a major driver of illegal gun possession, violence, and crime in the community. Straw purchases are the most common method of illegal gun transfer, accounting for roughly 42 percent of all firearm trafficking.[3] Further, straw purchases are *highly* associated with violence and shootings, with the ATF finding that around 24% of illegal straw purchases result in a shooting.[4] That is a far higher percentage than other forms of firearms trafficking, such as theft.[5] Based on ATF data, illegally trafficked guns are around twice as likely to be involved in shootings as are legally purchased firearms.[6]

---

[3] Bureau of Alcohol, Tobacco, Firearms and Explosives, *National Firearms Commerce and Trafficking Assessment: Firearms Trafficking Investigations - Part VI*, 9 (2024), available at https://www.atf.gov/sites/default/files/part_vi_-_traffickers_end_users_and_defendants_-_final_4.2.24.pdf.

[4] Bureau of Alcohol, Tobacco, Firearms and Explosives, *National Firearms Commerce and Trafficking Assessment: Firearms Trafficking Investigations - Part IX, 5* (2024), available at https://www.atf.gov/sites/default/files/part_ix_-_investigation_outcomes_-_final_4.2.24.pdf.

[5] *Id.*

[6] Suplina et al, *The Supply Side of Violence: How Gun Dealers Fuel Firearm Trafficking* (Dec. 2, 2025), available at

Congress chose to criminally prohibit lying to a firearms dealer to buy a gun for a convicted felon and chose to subject offenders to serious punishment. 18 U.S.C. § 924(a)(2) (allowing up to 10 years imprisonment for the offense). There are very good reasons for that decision.

This case demonstrates the significant human costs imposed by straw purchases. The defendant purchased a powerful, AR-style rifle for an individual that the defendant knew was a felon and was prohibited from having guns. Further, the defendant informed law enforcement that she was aware of ongoing relationship issues Noel Jr. had with the victim, and the defendant was concerned about Noel Jr.'s mental health. The defendant repeatedly asked Noel Jr. how he was doing mentally "because something is not right." Yet the defendant still purchased the gun for Noel Jr, and in return, she got a free "quarter" of marijuana, which is "what [she] asked for anyways."

The defendant was not charged with accomplice to murder as a result of her actions. She may not have known Noel Jr.'s true intentions after he got the firearm. But that is *exactly why* the defendant's actions

---

https://everytownresearch.org/report/how-gun-dealers-fuel-firearm-trafficking/.

are so dangerous and *exactly why* federal law imposes serious criminal punishment for the offense. It is all the more dangerous when the defendant has present and preexisting concerns over the mental health of the recipient, and the defendant is aware of ongoing problems in the recipient's personal life. The combination of conflict with intimate partners, mental health concerns, and firearm possession routinely leads to the most serious forms of domestic violence. *See* Tobin-Tyler, *Intimate Partner Violence, Firearm Injuries and Homicides: A Health Justice Approach to Two Intersecting Public Health Crises*, J. Law Med. Ethics (2023) ("More than half of female homicide victims are killed by a current or former male intimate partner, and 96% of murder-suicide victims are female. Firearms are used in more than 50% of these [intimate partner violence]-related homicides.").

The defendant's decision to engage in an illegal straw purchase for a known felon was exceedingly dangerous, and as a result of that purchase, two individuals lost their lives. Five children no longer have their mother and at least two children no longer have any parents.

The defendant's actions were reckless, irresponsible, and criminal. A strong sentence of imprisonment is fully warranted to address the

dangerous conduct underlying the offense. The defendant does not have a criminal history. But that is not altogether surprising given that straw purchasing generally relies upon the ability to legally purchase a firearm and, hence, no serious criminal record. It was *because* the defendant was not a felon that she was able to commit the offense conduct and buy a gun for a felon.

In addition, the defendant is pursuing some schooling, though it is uncertain whether she will continue in the field. PSR § 52. She does appear to have support in the community.

The defendant has positives in her life, but she chose to commit an exceedingly serious offense that resulted in exceedingly serious harm to others. The laws the defendant violated were written to prevent the tragedy that unfolded in this case. Considering the nature and circumstances of the offense and the history and characteristics of defendant, a sentence at the bottom of the guidelines is warranted.

### B. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

The offense conduct in this case is very serious. The defendant intentionally circumvented basic firearm laws to allow a convicted felon

to have access to a powerful assault-style rifle, resulting in a murder-suicide hours later. It is hard to imagine a clearer case of harm created by an illegal straw purchase. Punishment with a term of imprisonment is fully warranted.

The defendant also blatantly disregarded the law. She admitted that she knew Noel Jr. was a felon, and she bought the gun for him anyways, recognizing that he was prohibited from having firearms. This violation of essential gun laws, including through use of an intentionally false statement, justifies the imposition of strong criminal consequences.

Straw purchasing is not "just" a lie or a second-order concern for the larger issue of gun violence. It is *directly tied to*, *causes*, and *drives* gun violence, shootings, and deaths. And that is exactly what occurred in this case. The defendant demonstrated clear disrespect for basic safety laws. A strong sentence of imprisonment provides justice for this clear violation of law and ensures justice for those directly harmed by the defendant's actions.

**C. The Need to Afford Deterrence**

The need for deterrence supports the need for a term of imprisonment. The defendant does not have a serious criminal history,

like most straw purchasers. The court should impose a clear and firm sentence that demonstrates to both the defendant and the community that straw purchasing is extraordinarily serious and will be met with real and substantial consequences. The defendant may believe that, because she may not have known Noel Jr. would commit a murder-suicide hours later, she should not be subject to serious criminal punishment. Not so. It is *because* the defendant obtained an AR-style rifle for a known felon and *because* Noel Jr.'s intentions may not have been fully known that this offense conduct was so serious and dangerous.

The defendant and others in the community should know that performing a straw purchase is treated with the seriousness it deserves. That is all the more so when the defendant merely received marijuana in return for the purchase. Individuals without felonies, like the defendant, cannot reasonably conclude that lying to a firearms dealer to illegally buy a gun for a felon is an insignificant, low-risk offense with minimal consequences. Moreover, the defendant and other potential straw purchases must know the significant danger posed to the community when a firearm is given to someone the defendant *already knew* had

mental health issues and relationship problems with an intimate partner.

Two individuals may be alive today if the defendant chose not to perform an illegal gun purchase. Deterrence is required to help prevent similar tragedies in the future.

**D. The Need to Protect the Public**

Straw purchases drive illegal gun possession, shootings, and killings in the community. That has unfolded in this case as a result of the defendant's actions. Extensive legal systems and background checks are in place to prevent felons like Noel Jr. from having access to guns. That risk only increases when felons, such as Noel Jr., have known and preexisting mental health issues and ongoing disputes with an intimate partner. The community needs protection from the straw purchasing that the defendant flagrantly engaged in in this case, and a strong custodial punishment is fully warranted to protect the public.

**E. The Need for Rehabilitation**

A custodial sentence within the guideline range is needed to protect the public, effect just punishment, and deter future criminal behavior. While incarcerated, the defendant would be given access to resources

from the Bureau of Prisons, educational opportunities, professional training, mental and physical health supervision, and counseling. All these resources would redound to the benefit of the defendant and society at large.

**F. The Kinds of Sentences Available, the Sentencing Range, and the Need to Avoid Unwarranted Sentencing Disparities**

The advisory guideline range is the "starting point and the initial benchmark" for fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (citations and quotations removed). It is based on "empirical data and national experience, guided by a professional staff with appropriate expertise," *id.* at 109, and the range inherently incorporates consideration of unwarranted disparities countrywide. *Gall v. United States*, 552 U.S. 38, 54 (2007); *United States v. Haile*, 157 F.4th 820, 833 (6th Cir. 2025) (reasoning that the guidelines have "necessarily taken into account the need to avoid unwarranted sentence disparities, viewed nationally"); *United States v. Hymes*, 19 F.4th 928, 935-36 (6th Cir. 2021) ("[T]he Guidelines, not statistical reports, are our barometer for promoting nationwide sentencing uniformity.").

With an offense level of 13 and a criminal history category of I, the defendant's guideline range is 12 to 18 months. Given the specific facts of this case, a guideline-range sentence is fully justified. That sentence would ensure conformity with nationwide sentencing practices while also providing adequate and individualized punishment for the defendant.

## IV. Conclusion

For the reasons stated above, the court should sentence the defendant to 12 months imprisonment, at the bottom of the advisory guideline range.

Respectfully Submitted,

JEROME F. GORGON JR.
United States Attorney

/s/*Robert M. Kuhn*
Robert M. Kuhn
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9707
robert.kuhn@usdoj.gov

Dated: September 2, 2026

## CERTIFICATE OF SERVICE

I certify that on September 2, 2026, I electronically filed this motion for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record.

/s/*Robert M. Kuhn*
Robert M. Kuhn
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9707
robert.kuhn@usdoj.gov