**United States District Court**
**Eastern District Of Michigan**
**Southern Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | | Case No. 2:26-cr-20113 |
| Plaintiff, | § | Hon. Robert J. White |
| | § | |
| v. | § | |
| | § | |
| VICTORIA GREEN, | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

**DEFENDANT VICTORIA GREEN'S SENTENCING MEMORANDUM IN SUPPORT OF A NONCUSTODIAL SENTENCE**

**TO THE HONORABLE ROBERT J. WHITE:**

Defendant Victoria Green, through counsel, respectfully submits this Sentencing Memorandum and asks the Court to impose three years of probation with appropriately demanding conditions. Ms. Green accepts responsibility for falsely representing that she was the actual purchaser of a firearm, in violation of 18 U.S.C. § 922(a)(6). She does not minimize that decision or the terrible violence that followed. But she did not know that Clifford Noel, Jr. intended violence, she has no criminal record, she has complied with bond, and she is not a danger to the community. A sentence that keeps her working, studying, receiving counseling, and caring for her ten-year-old son will punish her while preserving the very factors that make reoffending least likely.

## I. BACKGROUND AND RELIEF REQUESTED

On October 30, 2025, Ms. Green accompanied Noel to National Pawnbrokers in Waterford. The record reflects that Noel chose the Ruger AR-556 rifle, handled the discussion with store personnel, supplied the purchase money, and bought ammunition. At his direction, Ms. Green stepped forward and completed ATF Form 4473, falsely identifying herself as the actual buyer even though she knew Noel was a felon and could not purchase the rifle himself. She should have refused. Her guilty plea recognizes that responsibility.

Fewer than four hours later, the rifle was used to kill L.H.; Noel then died by suicide with the same weapon. Those deaths are devastating. They also were Noel's independent acts. The record does not establish that Ms. Green knew of, intended, encouraged, or anticipated either shooting. Her sentence must reflect her own offense and culpability—not a hindsight assumption that she shared an intent the evidence does not attribute to her.

Ms. Green initially gave agents an incomplete account, then admitted that Noel had supplied the money and asked her to purchase the firearm because he was a felon. She later surrendered when directed, entered a timely guilty plea on May 26, 2026, and received the full three-level reduction for acceptance of responsibility. In her presentence statement, she acknowledged the seriousness and consequences of her conduct, committed herself to better decisions, and asked to continue counseling so she can address stress and emotions in a healthier way.

The Presentence Report calculates an offense level of 13 and Criminal History Category I, yielding an advisory range of 12 to 18 months in Zone C. The defense preserves and incorporates its objections seeking the two-level reduction under U.S.S.G. § 2K2.1(b)(10) and a mitigating-role adjustment under § 3B1.2. If sustained, the defense calculates an offense level of 9 and a range of 4 to 10 months in Zone B. Regardless of how the Court resolves those objections, the § 3553(a) factors independently support a downward variance to probation.

Ms. Green proposes three years of probation, continued mental-health counseling, continued education or vocational training, lawful employment, drug testing as directed, a prohibition on firearms and ammunition, and 100 hours of community service. If the Court believes an added restriction is necessary, it may impose home detention or location monitoring rather than incarceration.

## II. THE GOVERNING § 3553(a) FRAMEWORK

Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and needed education, vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The Court must also consider the nature and circumstances of the offense; Ms. Green's history and characteristics; the available sentences; the advisory Guidelines and pertinent policy statements; the need to avoid unwarranted disparities; and restitution. Id. § 3553(a)(1), (3)–(7).

The Guidelines are advisory. United States v. Booker, 543 U.S. 220, 245 (2005). After calculating the advisory range, the Court makes an individualized assessment based on the totality of the circumstances. Gall v. United States, 552 U.S. 38, 49–50 (2007); United States v. Bolds, 511 F.3d 568, 579–81 (6th Cir. 2007). Probation is a substantial restriction on liberty, not an absence of punishment. Gall, 552 U.S. at 48. Post-offense rehabilitation bears directly on character, deterrence, and recidivism. Pepper v. United States, 562 U.S. 476, 491–93 (2011).

## III. THE § 3553(a) FACTORS SUPPORT PROBATION

### A. The nature and circumstances show serious misconduct, but limited personal culpability for the later violence. § 3553(a)(1).

The firearm offense is serious because laws governing firearm acquisition depend on truthful answers and prevent prohibited persons from obtaining weapons through nominees. Ms. Green knew Noel was a felon and nevertheless signed the form. A just sentence must communicate that this conduct is unacceptable.

The Court may also account for important distinctions in culpability. Noel selected the rifle, supplied the cash, interacted with the salesperson, purchased the ammunition, and was the intended recipient. Ms. Green had never before purchased or handled a firearm. She received no cash profit. Although the PSR records that she received marijuana, the mitigation record describes her decision primarily as arising from pressure, indebtedness, and an unhealthy relationship

with a person who had previously done favors for her. Her father's immediate reaction—that she had been "manipulated" into conduct outside her character—accords with that history. This context does not excuse the offense. It explains why a person with no prior record made one disastrous choice and why counseling, boundaries, and supervision directly address the risk of recurrence.

The tragic aftermath increases the emotional gravity of the case, but proportional sentencing still requires attention to knowledge and intent. Nothing in the plea agreement or PSR establishes that Ms. Green knew Noel planned to harm L.H. or himself. The Court can condemn the unlawful purchase without treating Ms. Green as though she intended two deaths.

**B. Ms. Green's history and characteristics strongly favor community supervision. § 3553(a)(1).**

**1.** She is the full-time parent and stabilizing presence for her ten-year-old son.

Ms. Green has full custody of her son, Jeremiah, who lives with her and her father in the Pontiac home where she was raised. The child's father is contacted only regarding their son's needs; there is no custody or child-support order. Ms. Green is therefore not merely an important caregiver—she is the parent responsible for Jeremiah's daily stability, school routines, transportation, discipline, reassurance, and material needs. When Probation asked who would care for him if she were incarcerated, she could not identify a substitute plan.

The family's letters confirm this is a lived responsibility, not a litigation label. Her mother describes Jeremiah as Ms. Green's greatest motivation and responsibility and emphasizes the stability, love, and guidance she provides. Her sister likewise describes Ms. Green as a dependable mother on whom the family leans. Incarceration would separate a ten-year-old from his primary parent, disrupt a stable and inspected home, and impose punishment on a child who had no part in the offense. Parenthood does not confer immunity, but the concrete effect on this dependent child is central to an individualized sentence.

**2.** She is actively building a career through college and vocational credentials.

Ms. Green is enrolled at Macomb Community College in the surgical-technology track and holds an active Certified Nursing Assistant license through May 28, 2028, with no record of misconduct. Her transcript supplies objective evidence of recent progress: in Fall 2025 she earned B grades in six-credit Human Physiology and three-credit Medical Terminology, a 3.000 term GPA, and a 2.925 cumulative GPA. She then enrolled in Pathogenic Microbiology for the Winter 2026 term.

Her professor, Kelly Lait, describes Ms. Green as responsible, respectful, thoughtful, receptive to feedback, and committed to her education. Other supporters observed that she continued attending classes and working despite the stress of this case. This is precisely the forward-looking conduct relevant under

Pepper. A prison term would interrupt a demanding health-care pathway; probation can make continued education and satisfactory progress enforceable conditions while allowing Ms. Green to become a more stable provider and model persistence for her son.

**3.** She works, has no criminal history, and has complied with supervision.

At age thirty, Ms. Green stands in Criminal History Category I with zero criminal-history points, no adult convictions, no pending cases, and no other reported criminal conduct. She has worked as a delivery driver for Amazon in Pontiac since September 2025, earning $22.25 per hour, and has a history of health-care and production employment. Her father told Probation that she normally stays out of trouble, stays working, and is a good mother he never had to worry about.

Ms. Green has remained on an unsecured bond since November 20, 2025 and has substantially complied. Her initial test was positive for marijuana, consistent with her reported prior use, but every later test reported in the PSR was negative. Her substance-abuse screening placed her at low risk for future abuse. These verifiable facts—rather than promises about what she might do—show that she can be safely and productively supervised in the community.

**4.** She independently sought treatment and is developing insight into the decision that brought her here.

This prosecution produced anxiety, depression, and periods of suicidal ideation. Ms. Green did not ignore those symptoms. Beginning in December 2025, she independently obtained therapy and psychiatric care and has continued counseling, paying approximately $100 per month out of pocket. Treatment focuses on coping skills and healthier responses to stress. Her willingness to seek help, remain engaged, and identify the manipulative relational dynamic surrounding the offense is a protective factor. Community supervision can preserve that therapeutic relationship and require continued treatment; incarceration would disrupt it.

Long-time friends and coworkers consistently describe Ms. Green as quiet, cautious, reliable, hardworking, and devoted to her son. They also describe genuine remorse, accountability, and this prosecution as a profound wake-up call. Those observations are consistent with the objective record: no prior record, steady work, ongoing school, voluntary treatment, and compliance on bond.

**C. Probation satisfies each statutory purpose. § 3553(a)(2).**

**1.** Just punishment and respect for law.

A felony conviction, three years under this Court's authority, home and workplace contacts, drug testing, counseling, community service, and the possibility of revocation constitute real punishment. Probation will require Ms. Green to answer for this offense every day while maintaining the responsibilities that make rehabilitation most likely.

**2.** Deterrence.

The deaths associated with the firearm, federal prosecution, public felony conviction, financial strain, and threat of imprisonment have delivered an unusually powerful and personal deterrent. Her conduct since arrest shows that the lesson has taken hold. A demanding probationary sentence also communicates that acting as a straw purchaser brings federal conviction, close supervision, and substantial restrictions even where the defendant did not anticipate later violence.

**3.** Protection of the public.

Ms. Green has never committed a violent offense, has no criminal history, has tested negative since her initial screen, and has complied in the community. The specific risk revealed here—poor boundaries and susceptibility to pressure—can be addressed through counseling, firearm prohibitions, monitoring, and immediate sanctions for noncompliance. Nothing in the record shows that imprisonment is necessary to incapacitate her.

**4.** Treatment, education, and vocational training.

The record identifies concrete programs already working: counseling, college coursework, an active CNA credential, and lawful employment. Probation allows the Court to reinforce those programs rather than dismantle them. The most effective correctional plan is the one already producing measurable progress.

**D. A probationary sentence is legally available and appropriately tailored. §§ 3553(a)(3)–(5).**

The offense is a Class C felony carrying no mandatory minimum. The PSR confirms that probation is statutorily available for a term of one to five years. See 18 U.S.C. §§ 3559(a)(3), 3561(a), (c)(1). The advisory Zone C range does not itself authorize straight probation, U.S.S.G. § 5B1.1, but Booker and Gall permit a variance when the § 3553(a) factors justify it. If the Court sustains the defense objections and reaches Zone B, probation with a qualifying confinement condition also falls within the advisory sentencing options.

The defense's requested conditions are targeted to the record: three years of probation; continued counseling addressing stress, decision-making, and unhealthy relationships; continued school or vocational training; lawful employment; testing as directed; no firearm or ammunition possession or purchase; and 100 hours of community service. If an additional liberty restriction is warranted, home detention or location monitoring would preserve accountability without removing Jeremiah's primary caregiver.

**E. Probation will not create an unwarranted disparity. § 3553(a)(6).**

The PSR's Judicial Sentencing Information reports 618 comparable defendants sentenced during fiscal years 2021 through 2025 with a final offense level of 13 and Criminal History Category I under § 2K2.1, excluding substantial-assistance cases. Of those defendants, 402—or 65 percent—received imprisonment in whole or in part. Conversely, approximately 35 percent did not receive

imprisonment in whole or in part, and the median sentence across the entire group was six months. These data do not dictate a result, but they confirm that a noncustodial sentence for a first offender at this offense level is not an outlier. Ms. Green's caregiving responsibility, verified educational progress, treatment, employment, and successful bond supervision provide individualized reasons for that result here.

**F. Restitution does not require a different sentence. § 3553(a)(7).**

The PSR identifies no restitution request arising from the offense of conviction. Restitution therefore does not supply a reason for incarceration. A community sentence would preserve Ms. Green's ability to work, support her son, pay the costs associated with supervision and treatment, and complete community service.

**IV. A CUSTODIAL SENTENCE WOULD BE GREATER THAN NECESSARY**

The Court can impose a sentence that is both compassionate and exacting. Prison would remove a compliant, nonviolent first offender from employment, interrupt verified college progress, disrupt ongoing mental-health treatment, and separate a ten-year-old from the parent who has full custody and no established substitute caregiver. Those harms would weaken the strongest protective factors in Ms. Green's life without materially improving public safety.

Probation does the opposite. It preserves work, school, treatment, and parenting while adding the Court's structure and consequences. It makes Ms.

Green confront the offense through sustained compliance and service, forbids any contact with firearms, and reserves imprisonment if she violates the Court's trust. On this record, that is not leniency without accountability; it is the sentence most closely fitted to the statutory purposes.

## V. CONCLUSION

Ms. Green made a grave error in judgment. She has admitted it and will live with the knowledge that a firearm she unlawfully helped Noel acquire was used in two deaths. The Court need not add an avoidable second tragedy by removing the primary caregiver from a ten-year-old child when strict community supervision can fully serve the purposes of sentencing.

Her clean record, successful bond performance, work, verified college achievement, continued counseling, family support, and insight into the unhealthy pressure that contributed to the offense show a person capable of using a second chance well. A three-year term of probation with the proposed conditions is sufficient to punish, deter, protect, and rehabilitate. Imprisonment would be greater than necessary.

WHEREFORE, Victoria Green respectfully requests that this Honorable Court vary downward and impose three years of probation with the conditions proposed above, or such other noncustodial sentence as the Court finds appropriate.

Respectfully submitted,

/s/ Jeffrey M. Perlman
Jeffrey M. Perlman (P80517)
23800 Northwestern Hwy., Ste. 220
Southfield, MI 48075
(248) 635-2540
Jeff@JeffPerlmanLaw.com
*Attorney for Defendant Victoria Green*
Dated: September 4, 2026

# EXHIBIT A

Character and Support Letters

Gmail

Jeff Perlman <jeff@jeffperlmanlaw.com>

# Fwd: character letter

1 message

**Tori G** <vgreen3551@gmail.com> Thu, Feb 19, 2026 at 8:16 AM
To: "jeff@jeffperlmanlaw.com" <jeff@jeffperlmanlaw.com>

---------- Forwarded message ---------
From: **Ty Hall** <halltiekkia@gmail.com>
Date: Tue, Feb 17, 2026 at 11:56 AM
Subject: character letter
To: <vgreen3551@gmail.com>

Tiekkia Hall
(313-915-8075)
halltiekkia@gmail.com
2/17/26

To whom it may concern,

I am writing this letter on the behalf of my sister Victoria Green.I have known her my entire life. She is one of my younger siblings.Through out our childhood and now she's been a wonderful sister,mother and hard worker. I have witnessed her being a person our family can lean on when times are rough,she is there for us.One of the memories I have is when I lost a couple family members on my mother's side, she was there when I needed a shoulder to lean on and cry on. The way she puts her family and herself first I love the way she does that. Since she has been currently facing consequences of her action her mindset has change.Attending classes working under stress, but she still wakes up every day and goes to work with a smile on her face.My sister Victoria Green is very reliable and also responsible and i am proud to call her my sister.

Sincerely,
Tiekkia Hall

Gmail

Jeff Perlman <jeff@jeffperlmanlaw.com>

## Fwd: Character Reference for Victoria Green

1 message

**Tori G** <vgreen3551@gmail.com> Thu, Feb 19, 2026 at 8:17 AM
To: "jeff@jeffperlmanlaw.com" <jeff@jeffperlmanlaw.com>

---------- Forwarded message ---------
From: **ebony green** <ebonygrn@gmail.com>
Date: Sat, Feb 14, 2026 at 9:54 PM
Subject: Character Reference for Victoria Green
To: <vgreen3551@gmail.com>

The Honorable Judge [Last Name]
[Courthouse Name]
[Address]
[City, State, Zip]

Re: Character Reference for Victoria Green

Dear Judge [Last Name],

I am writing to you as the mother of Victoria Green. I have known her her entire life, and I would like to share with the Court the character of the woman I have raised and love dearly.

Victoria is a devoted mother to her young son. He is her greatest motivation and responsibility, and she works hard every day to provide stability, love, and guidance for him. She takes motherhood seriously and strives to be a positive example in his life.

In addition to being a dedicated mother, Victoria is currently pursuing her education to become a surgical technician. She has committed herself to building a stable and meaningful career in the medical field so she can support her son and contribute positively to society. This goal reflects her determination, growth, and desire to create a better future for her family.

While I understand the seriousness of the matter before the Court, I respectfully ask that you consider that this situation does not define who she is as a person. Victoria is capable of learning from her mistakes and continuing on a responsible path. She has strong family support, clear goals, and a deep desire to move forward in a positive direction.

As her mother, I stand beside her and will continue to provide guidance and accountability. I truly believe she has the character, strength, and potential to overcome this situation and continue growing into the responsible mother and professional she is working hard to become.

Thank you for your time, understanding, and consideration.

Respectfully,

Ebony Green

Gmail

Jeff Perlman <jeff@jeffperlmanlaw.com>

## Fwd: Charter Reference

1 message

**Tori G** <vgreen3551@gmail.com> Thu, Feb 19, 2026 at 8:18 AM
To: "jeff@jeffperlmanlaw.com" <jeff@jeffperlmanlaw.com>

---------- Forwarded message ---------
From: **Tiffany Greenbroadnax** <Greenbroadnax.Tiffan@jobcorps.org>
Date: Tue, Feb 10, 2026 at 9:02 AM
Subject: Charter Reference
To: Vgreen3551@gmail.com <Vgreen3551@gmail.com>
Cc: Tiffany Greenbroadnax <Greenbroadnax.Tiffan@jobcorps.org>

Dear Honorable Judge.

I am writing to provide a character reference for Ms. Victoria Green who is appearing before your court. I have known Ms. Green for a few years in the capacity of a coworker. And most recently as a friend. I am confident in her integrity and character.

In my experience with Ms. Green she has demonstrated professionalism and decorum. Also a great mother and a hard working young lady.

Kind Reguards.

*Tiffany Green Broadnax*
Outreach Assistant
Flint Genesee Job Corps
2400 N. Saginaw St.—Flint, MI. 48505
**Office:** 810.553.4343
**Cell:** 810.348.6166

**CONFIDENTIALITY NOTICE:** This email, including attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, or disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender immediately and destroy all copies of

Gmail

Jeff Perlman <jeff@jeffperlmanlaw.com>

**Fwd:**

1 message

**Tori G** <vgreen3551@gmail.com> Thu, Feb 19, 2026 at 8:19 AM
To: "jeff@jeffperlmanlaw.com" <jeff@jeffperlmanlaw.com>

---------- Forwarded message ---------
From: **Atnita Crump** <atnitac@umich.edu>
Date: Mon, Feb 9, 2026 at 1:29 PM
Subject:
To: <vgreen3551@gmail.com>

Recipients

To whom it may concern,

This letter is character reference for Victoria Green. I have had the privilege of knowing Victoria Green for over 15 years, our friendship began back in our middle school days. When you know someone for that long, you see them through every season of life, and I can say with total honesty that her character is defined by a strength and integrity that I have always admired.
Victoria is the definition of a "person of her word." In all the years we've been friends, she has never been someone to take the easy way out or flake on a commitment. She is incredibly reliable, if she says she will be there, she is there.

She's the person you call when things go wrong because you know she has the strength to handle it and the honesty to tell you the truth, even when it's hard to hear.
I've seen the way this situation has weighed on her, and I know her remorse is real because it comes from a place of deep hurt that she let herself down. She has treated this as a massive wake-up call, and I have watched her take full accountability for her actions while maintaining the drive to better herself for her future career in healthcare.
Most importantly, I want to speak to the kind of mother she is. She is raising a little boy, jeremiah and her strength as a parent is unmatched. Everything she does is fueled by the love she has for her kid and her desire to provide a stable, honest life for him. She is a pillar for her family, and I know that her primary focus now is being the role model her child deserves. She is a good, strong woman who made a mistake, and I truly believe she is

Respectfully,
Atnita Crump
Nitaa0821@gmail.com
947-800-9363

# Character Reference Letter for Victoria Green

To Whom It May Concern,

I am writing this letter to serve as a character reference for Victoria Green, a young single mother whom I have had the privilege of knowing for 20+ years. Throughout our acquaintance, I have been consistently impressed by her gentle nature, quiet demeanor, and steadfast dedication to her child.

Victoria is a person who approaches life with humility and caution. While she may not be the most outspoken individual in a group, her actions speak volumes about her integrity and sense of responsibility. She is often reserved, preferring to listen and observe rather than draw attention to herself. However, this quiet strength is evident in the way she cares for her child and manages the challenges of single parenthood.

Though she sometimes struggles with insecurity, Victoria is constantly striving to do her best. She is deeply devoted to her child and works tirelessly to provide a safe and nurturing environment. Her willingness to learn and grow, despite her self-doubt, is a testament to her resilience and determination. She worries about making mistakes, but her concern is always rooted in wanting the best for her child.

As someone who knows her well, I can attest to her compassionate heart and her unwavering commitment as a mother. She is honest, trustworthy, and kind. Her quiet presence is comforting, and she is always ready to support those she cares about, even if she is hesitant to ask for help herself.

I believe Victoria is a remarkable individual who deserves recognition for her efforts. She may be young and sometimes uncertain, but her love and devotion to her family are clear and unwavering. It is my sincere hope that this letter will help convey the strength of her character and the depth of her commitment.

If you have any questions or require further information, please feel free to contact me.

Sincerely,

Janice Johnson

janicefjohnson@msn.com

Gmail

Jeff Perlman <jeff@jeffperlmanlaw.com>

# Fwd: Letter

1 message

**Tori G** <vgreen3551@gmail.com> Thu, Feb 19, 2026 at 8:23 AM
To: "jeff@jeffperlmanlaw.com" <jeff@jeffperlmanlaw.com>

---------- Forwarded message ---------
From: **Erica Jones** <ericarochellejones258@gmail.com>
Date: Tue, Feb 17, 2026 at 6:11 PM
Subject: Letter
To: vgreen3551@gmail.com <vgreen3551@gmail.com>

Dear Judge : My name is Erica Jones Im writing this letter on behalf of Victoria Green. We met 5 years ago on a job assignment. I knew she was someone I could connect with.She was very quiet but helpful always showing concern for others . I just took to her right away hard worker very determined to make sure she provide for her son .Always spoke passionate about going back school. She has accomplished with challenges an other responsibilities . Very proud of her She 'has a kind heart always smiling . It really hurts to see her in a traggic situation & that family prayers to all that has to go through this pain 🙏 She" going through counseling coping trusting someone with bad intentions. Unaware unfortunately in todays society we must be careful who u trust at all times. Surely I know with all my heart never would Victoria agree to or knowly harm anyone . Not her
character I know hope u can see it as well . 🙏

Macomb Community College
Education • Enrichment • Economic Development

Discover. Connect. *Advance.*℠

September 16, 2026

To Whom It May Concern,

I am writing to provide a character reference for Victoria Green, a student in my winter 2026 Pathogenic Microbiology course. Victoria has consistently shown responsibility, respect for others, and a strong commitment to her education. She is thoughtful in her coursework, courteous to classmates, and receptive to feedback.

While I am not aware of all the details of her current court matter, the Victoria I know is mature, cooperative, and capable of positive growth. I believe she takes her obligations seriously and has the potential to move forward constructively.

If additional information is needed, I am available to provide it.

Sincerely,

Kelly Laity
Professor of Biology
Macomb Community College
Laityk88@macomb.edu
586-447-8631

# EXHIBIT B

Macomb Community College Transcript

03/25/26 Macomb Community College Page 1 of 1
Unofficial Academic Credit

Victoria N. Green
279 Seward St
Pontiac MI 48342-3357

ID Number: 1287422
SSN: XXX-XX-8578
Birth Date: 04/17/96
Birth Name:

| Course | | Title | Grd | R | Hrs Att | Hrs Cmpt | Grade Points | Course Dates |
|---|---|---|---|---|---|---|---|---|
| ENGL | 1210 | Composition 1 | | | 0.00 | 3.00 | 0.00000 | 07/02/21-08/28/21 |
| MATH | 1100 | Everyday Mathemati | | | 0.00 | 3.00 | 0.00000 | 07/02/21-08/28/21 |
| ENGL | 1220 | Composition 2 | | | 0.00 | 3.00 | 0.00000 | 09/02/21-12/28/21 |
| PSYC | ELE2 | Psychology 2nd Yr | | | 0.00 | 3.00 | 0.00000 | 09/02/21-12/28/21 |
| PSYC | 1010 | Introductory Psych | | | 0.00 | 3.00 | 0.00000 | 05/02/22-06/28/22 |
| BIOL | ELE1 | Biology 1st Yr Ele | | | 0.00 | 3.00 | 0.00000 | 09/02/22-12/28/22 |
| BIOL | ELE1 | Biology 1st Yr Ele | | | 0.00 | 1.00 | 0.00000 | 09/02/22-12/28/22 |
| HHSC | ELE1 | Hlth & Hmn Srv Crs | | | 0.00 | 2.00 | 0.00000 | 09/02/22-12/28/22 |
| CHEM | ELE2 | Chemistry 2nd Yr E | | | 0.00 | 3.00 | 0.00000 | 05/02/22-06/28/22 |
| | | Non Totals: | | | 0.00 | 24.00 | 0.0000 GPA = | 0.0000 |
| | | Cumulative Totals: | | | 0.00 | 24.00 | 0.0000 GPA = | 0.0000 |
| BIOL | 1000 | General Biology 1 | W | | 4.00 | 0.00 | 0.00000 | 01/06/20-05/04/20 |
| HUMN | 1700 | Comparative Religi | B- | | 3.00 | 3.00 | 8.10000 | 01/10/20-05/01/20 |
| PSYC | 1010 | Introductory Psych | W | | 4.00 | 0.00 | 0.00000 | 03/09/20-05/02/20 |
| | | 2020WI Totals: | | | 11.00 | 3.00 | 8.1000 GPA = | 2.7000 |
| | | Cumulative Totals: | | | 11.00 | 27.00 | 8.1000 GPA = | 2.7000 |
| BIOL | 2710 | Human Physiologica | B | | 6.00 | 6.00 | 18.00000 | 08/18/25-12/10/25 |
| HHSC | 1700 | Medical Terminolog | B | | 3.00 | 3.00 | 9.00000 | 08/21/25-12/11/25 |
| | | 2025FA Totals: | | | 9.00 | 9.00 | 27.0000 GPA = | 3.0000 |
| | | Cumulative Totals: | | | 20.00 | 36.00 | 35.1000 GPA = | 2.9250 |
| BIOL | 2730 | Pathogenic Microbi | | | | | | 01/12/26-05/11/26 |
| | | 2026WI Totals: | | | 0.00 | 0.00 | 0.0000 GPA = | 0.0000 |
| | | Cumulative Totals: | | | 20.00 | 36.00 | 35.1000 GPA = | 2.9250 |

TOTALS: CRED.ATT = 20.00 CRED.CPT = 36.00 GRADE.PTS = 35.1000 GPA = 2.9250

Unofficial